### HARLEY C. LONEY CO. v. PERFECT EQUIPMENT CORPORATION.

No. 9968.

United States Court of Appeals Seventh Circuit.

Dec. 12, 1949.

166

Casper W. Ooms, Chicago, Ill. (Townsend F. Beaman, Robert C. Williams, Jackson, Mich., of counsel), for appellant.

Ralph G. Lockwood, Elmer L. Goldsmith, Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

The appellant, Harley C. Loney Company, seeks to reverse a judgment of the District Court of the United States for the Southern District of Indiana which dismissed its action for royalties alleged to be due under a license agreement, and also sought a declaration that the license had been terminated by cancellation.

The Loney Company is a Michigan corporation and is the owner by assignment of United States Letters Patent No. 2036757, issued on April 7, 1936 to James W. Hume for an adjustable balancer for vehicle wheels. Claims 7, 8, 10, 11 and 12 of the Hume Patent relate to spring clip weights, while the other claims thereof relate to set screw weights.

The defendant, Perfect Equipment Corporation, is an Indiana company which since December 1943 has been engaged in the manufacture and sale of a spring clip type of balance weight of a structure covered by claims 7, 8, 10, 11 and 12 of the Hume Patent. The defendant does not manufacture or sell the set screw type of balance weights covered by the other claims of the Hume Patent.

It appears that in 1943 the plaintiff Loney notified the defendant Perfect that its spring clip weights infringed claims 7, 8, 10, 11 and 12 of the Hume Patent, and on December 28, 1943, plaintiff filed suit for the infringement of said claims against a customer of the defendant in the District Court for the Northern District of Illinois, Eastern Division. Loney and the defendant, which had apparently undertaken the defense of its customer, agreed to have the Illinois suit continued generally until the disposition of a similar suit, Harley C. Loney Co. v. Ravenscroft, in the District Court for the Northern District of Indiana. On November 5, 1945, the District Court in Indiana held claims 7, 8, 10, 11 and 12 of the Hume Patent to be invalid. Loney company immediately filed notice of appeal in the Indiana case thus removing it to this Court.

Shortly after the decision in the Ravenscroft case, Loney and the defendant settled the suit pending in the District Court of Illinois.

Under the terms of such settlement the plaintiff and the defendant entered into the license agreement which is the basis of the present suit, and the defendant paid to plaintiff the sum of Fifteen Hundred ($1500) Dollars in cash for past infringements of plaintiff's patents.

The license agreement dated November 29, 1945 was of a standard form developed by plaintiff in the conduct of its business.

Under Section 1 of the license agreement Loney granted to Perfect, subject to conditions therein enumerated, a non-exclusive license for the duration of the patent, to make, use and sell, throughout the United States and its territories, wheel balance weights within the claims of the Hume Patent. The license was non-transferable except to a successor in business and was subject to an outstanding exclusive license to a third party.

Section 2 provided that Perfect place a distinctive identifying mark on each balance weight it made and sold, and section 3 required that each weight manufactured under the license should bear the notice: "Pat. 2036757." Section 4 required that

statements regarding the patent intended for general circulation be approved by Loney.

Section 5 of the license agreement was in these words and figures: "If and when, before the normal termination thereof, the above mentioned patent number 2036757 has been so judicially interpreted that the Perfect balance weight, as made by it under this license agreement with Loney, would not, under such interpretation, be an infringement thereof, Perfect shall be relieved from further royalty liability hereunder to Loney for weights manufactured and sold by Perfect to parties within the jurisdiction of the court rendering the adverse decision, until such judicial interpretation has been so modified as to bring again the Perfect product within the purview of the patent."

Section 6 of the license agreement fixed the amount of royalties to be paid, and section 7 provided that payments of royalties for every month should be made between the 20th and 25th of the succeeding month, with provisions for statements by Perfect and for adjustment in Perfect's favor on balance weights returned and on those where payments were 90 days or more over due.

Section 8 provided for the keeping of accounts and for the inspection thereof by Loney.

Section 9 provided: "Loney may at its option cancel this license agreement upon 60 days written registered notice to Perfect upon the failure by Perfect to pay the royalty becoming due as hereinbefore provided, unless Perfect has paid such royalty during such sixty (60) day period."

Section 10 was in the following words and figures: "Perfect may by written registered notice to Loney served within a thirty (30) day period following twelve months from date of execution of this agreement, and during any subsequent thirty day period following any subsequent twelve month period, surrender the license herein granted, provided however that such surrender shall not relieve Perfect of liability for payment of any and all royalties which may remain due to Loney at the time. Upon such surrender, Perfect's rights under said license shall cease and determine in their entirety."

Section 11 provides that if Loney shall thereafter grant a license at a lessor royalty rate, or on any more favorable terms and conditions, Perfect shall be entitled to the benefit of such lower royalty, or such more favorable terms and conditions. In Section 12, Loney undertakes, upon notice, to defend at its own expense any suit for infringement that may be brought against Perfect or its customers.

On the day the license agreement was executed, November 29, 1945, Perfect wrote Loney as follows:

"Gentlemen:

"I am writing this letter to express our understanding in relation to the license contract we are executing as of even date, and in relation to the suit you brought against our distributor Grimm-Hansen-Treland Inc. in the U. S. District Court at Chicago, which case will be dismissed by stipulation.

"This letter, when signed by you, and upon receipt by you of our check for $1,-500.00, which will be mailed to you on December 30 or 31, 1945, constitutes a release for all past infringement of your patent 2,036,757, by us and our distributors, customers, etc., and full payment for the royalties otherwise due and payable for wheel weights made or sold by us during the month of December, 1945. It is further understood that under the said contract we have the option, at the end of a one-year period, either to cancel the contract, as provided in clause 10 of the contract, or to serve notice on you that any subsequent royalties paid must be repaid by you to us in the event that the U. S. Court of Appeals of the 7th Circuit thereafter hands down a decision in the appeal from the Case of Loney v. Ravenscroft invalidating the said patent 2,036,757, or finding it not infringed by or unenforceable against the structure complained of in the said Loney v. Ravenscroft suit, you agreeing, in the event such a decision is handed down, to repay us such royalties.

"Yours very truly,
"Perfect Equipment Corp.
"By J. G. Smissen
"Secretary-Treasurer"

Loney accepted the modification proposed in this letter. From and after December 1, 1945, the parties began operating under the license agreement and in the period from December 1, 1945 to December 1, 1946 Perfect paid to Loney the sum of Twenty-Four Thousand, Eight Hundred Fifty-Two and 33/100 ($24,852.33) Dollars for royalties. While the appeal from the Ravenscroft case was pending in this court, the parties, through their respective attorneys, exchanged several letters relating to various sections of the license agreement which are included in the record.

One of the results of these communications was that Perfect, by agreement, deducted from its royalty payments each month, a sum equal to one per cent of royalties paid to cover sales of its balance weights in the Northern District of Indiana.

On January 15, 1947, Perfect delivered to Loney its check for royalties due for December 1946, and shortly thereafter notified Loney that it desired to continue as a licensee. It was then agreed that instead of paying royalties to Loney monthly as provided in the contract, the payments due from December 1, 1946 should be retained by Perfect until the decision of Loney v. Ravenscroft by this Court. Pursuant to that understanding the January 1947 payment was returned to Perfect; thereafter Perfect merely reported its sales monthly. Up to May 1947, the royalties due reported totaled Twelve Thousand, Seven Hundred Sixty-Seven and 65/100 ($12,767.65) Dollars from which 1% should be deducted for sales within the Northern District of Indiana.

On January 23, 1947, this Court rendered its decision in Loney Co. et al. v. Ravenscroft et al., 162 F.2d 703. We held claims 7, 8, 10, 11 and 12 of the Hume Patent invalid.

Perfect did not, after the decision of this Court invalidating these claims of the

Hume patent, cancel its license from Loney held under the contract of November 29, 1945, but it did continue and still continues to hold itself out as a licensee under said Patent. It marks its balance weights, of the spring clip type "Patent 2036757," as provided in the contract of November 29, 1945. It continued and still continues to sell its balance weights of spring clip type not alone in the 7th Circuit but throughout the United States.

On November 15, 1947, Loney addressed to Perfect a letter which stated among other things:

"Under the provisions of our license agreement with you upon the Hume Patent No. 2036757 you are required to report and make royalty payments each month.

"As you are in arrears upon all weight sales made to parties outside the Seventh Circuit since June 23, 1947 you are hereby given notice by registered mail of our intention to cancel your license under the provisions of Section 9 of the aforesaid agreement."

This suit was begun on March 1, 1948. The case was tried without the intervention of a jury and was submitted to the trial court on a stipulation of facts and on letters and telegrams exchanged by the parties.

The vital matter involved in this appeal is the construction of the contract between the parties. That contract is evidenced first, by the license agreement, dated November 29, 1945; second, by the modifying letter bearing the same date from Perfect to Loney, and third, the understanding, evidenced by letter dated January 23, 1947, as to the payment of royalties due after December 1, 1946, which is of no importance.

We have heretofore set out in some detail the terms of the license agreement dated November 29, 1945. By its letter of November 29, Perfect stated to Loney that it understood clearly that at the end of a one year period it had the option to cancel the license agreement, as provided in Clause 10 of the contract. They further stated that they wished it to be understood that in addition to this option to cancel they had also the right to serve notice

on Loney that any subsequent royalties paid to Loney must be repaid if the Court of Appeals for the Seventh Circuit sustained the decision of the Indiana District Court in Loney Co. v. Ravenscroft. It seems plain that what was meant by this letter was that if they failed to cancel the contract at the end of the first year, they would still be entitled to cancel and demand a refund of royalties paid for during the second year period in the Court of Appeals for the Seventh Circuit sustained the decision in Loney Co. v. Ravenscroft. Manifestly there is nothing in the letter which in any way attempts to vary, change, or modify any other sections or provisions in the license agreement.

In our opinion, the letter meant that if this court affirmed the decision of the Indiana District Court in Loney Co. v. Ravenscroft, Perfect would have the right to cancel the license agreement, to cease to be a licensee and to demand a refund of all royalties paid after December 1, 1946. It did not contemplate or mean that Perfect should have the right to continue as a licensee without payment of further royalties in the event of such a decision.

This is manifest from the situation in which the parties stood at the time of the license agreement and the modifying letter. Loney was the owner of a patent, certain claims of which have been held invalid by the District Court in Northern Indiana. It was also a plaintiff suing for infringement of the same patent in the Northern District of Illinois. It seemed necessary, therefore, for Perfect to either compromise the lawsuit brought against its customer in the Illinois District Court, or to defend that suit and undertake to secure a decision similar to the one which had been rendered in the District Court of Indiana.

Instead of defending the Illinois suit and attempting to establish the invalidity of the Hume patent, Perfect chose to become the licensee of Loney, and to pay $1500 damages for infringements of the patent claims of Loney occurring up to that time.

The license agreement and letter of November 29, 1945 were executed to implement this settlement of the suit in the District Court of Illinois. Loney was satisfied because it secured a settlement for alleged past infringements, and also procured another licensee who was obliged to pay royalties. Perfect was content because it avoided the cost and expense of defending an infringement suit and likewise obtained an assurance that Loney would defend any further suits for infringement that might be brought against Perfect or its customers involving its disputed product.

Under the terms of the license agreement itself Perfect could cancel only by giving notice during a 30 day period following twelve months from the date of the contract, and during any subsequent 30 day period following any subsequent twelve month period.

The question naturally arose: What happens if the Court of Appeals sustains the District Court of Indiana?

The answer under the terms of the license agreement as written was plain. Perfect would be obliged to continue to pay royalties during a second year because they could cancel only by giving a thirty day notice at the end of each succeeding year.

Obviously this situation did not appeal to Perfect. They desired the right to cancel if the decision of this Court was adverse to the Hume patent. Hence their letter of November 29, 1945.

When the terms of that letter were excepted by Loney, the licensee was given the right to cancel the license and to demand a refund of royalties paid after December 1, 1946 if and when this court affirmed the judgment of the District Court of Northern Indiana.

Perfect failed to exercise its right to cancel on the adverse decision of this Court, consequently they remained a licensee of Loney liable to pay, according to the terms of the license contract, royalties accruing after June 23, 1947.

Until the license was cancelled by Loney's notice of November 15, 1947, Perfect remained a licensee under the agreement of November 29, 1945. The fact that it still places upon its manufactured product the number of the Hume patent is a repre-

sentation to the public that the patent is claimed to be valid and that the product marked is authorized to be manufactured and sold under the patent. As a matter of fact, Perfect still insists that it is a licensee and argues in this Court that it has a royalty free license, and is entitled to demand that Loney defend it and its customers in any infringement suit that may be brought against them. It even asserts that Loney has no right to cancel the license since it claims no royalties can become due.

Such a construction would be manifestly inequitable. It would in effect render nugatory every provision of the license agreement of November 29, 1945. It would give every licensee of Loney under the Hume patent a royalty free license, since each has a license with a·most favored licensee clause. So far as the Hume patent is concerned, Loney's only interest would arise from its assumed obligation to defend all enforcement suits against its licensees and other customers.

We are therefore compelled to reverse the judgment of the District Court for the Southern District of Indiana and to remand the cause for further proceedings in accordance with this opinion.