## HARLEY C. LONEY CO. v. MILLS.
### No. 10824.

United States Court of Appeals
Seventh Circuit.

June 24, 1953.

Harold B. Hood, Indianapolis, Ind., for appellant.

Casper William Ooms and Robert C. Williams, Chicago, Ill., Townsend F. Beaman, Jackson, Mich., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, the owner of Letters Patent No. 2,036,757 (issued to Hume), on September 19, 1946 granted a license to defendant, subsequently twice amended in ways not presently material. The license in Sections 6 and 7 required defendant to pay a specified royalty upon each licensed wheel balancing weight sold by defendant and to make periodic payments and reports.

Section 11, around which this litigation revolves, provided:

"In the event Loney shall hereafter grant a license under the patent aforesaid at a royalty rate or rates lower than the corresponding rate or rates provided for in paragraph 6 hereof, or on any more favorable terms and conditions, Mills shall be entitled to the benefit of such lower royalty rate or rates or such more favorable terms or conditions for its manufacture, use and sale hereunder subsequent to the date of such grant."

On May 22, 1950, following the decision of this court in Harley C. Loney Company v. Perfect Equipment Corp., 7 Cir., 178 F.2d 165, plaintiff negotiated with Perfect a settlement for past infringement in lieu of an accounting. Included in that negotiation was a paid-up license for the remainder of the term of the Hume patent, which expired April 7, 1953. By the terms thereof, Perfect paid accrued royalties on its previous manufacture of the device, in the amount of $22,700, and was granted a paid-up license for the remainder of the term of the patent for a consideration of the additional sum of $13,500, which was paid by Perfect. On May 23, 1950, plaintiff's attorney notified defendant's attorney of the granting of the license to Perfect and the terms thereof. The letter contained a suggestion that defendant might acquire a paid-up license "upon the payment of the sum of $13,500," and stated:

"However, until this offer is accepted, the Loney Company will expect an accounting from its licensees under the terms of their present license agreements."

Defendant made no response to this letter and continued to account, as provided in its license agreement, on its monthly production of weights, until April 18, 1951, when it notified plaintiff as follows: (a) that defendant elected to accept a fully paid-up license equivalent to that granted to Perfect Equipment Corporation; (b) that defendant had theretofore paid in monthly installments $10,157.66 on account of licensed weights sold by defendant subsequent to May 22, 1950; and (c) that defendant would pay the balance of $3,342.34 of the purchase price for such paid-up license, upon execution of such a license by plaintiff.

Plaintiff denied that defendant was entitled to a paid-up license on the terms thus stated, and defendant refused to pay further royalties.

The instant action was commenced July 13, 1951, to recover of the defendant unpaid royalties and for an adjudication that defendant was not entitled to credit for monthly royalty payments made under its license upon the amount of $13,500, paid by Perfect in a lump sum in acquiring its license of May 22, 1950. Defendant by answer denied that plaintiff was entitled to the relief sought and at the same time entered a counterclaim seeking a declaration that it was entitled to a paid-up license for $13,500, with credit for all royalty payments which it paid subsequent to May 22, 1950.

The District Court, predicated upon its findings of fact and conclusions of law, denied defendant the relief sought under its counterclaim and entered a judgment in favor of the plaintiff. From this judgment the appeal comes to this court.

It is apparent that the rights of the parties, insofar as they are involved in the present controversy, are fixed by Section 11 of the license agreement entered into in 1946 (heretofore quoted). Undoubtedly defendant under that section was entitled to the benefit of "any more favorable terms and conditions" which plaintiff had granted to Perfect. The question for decision is more readily stated than resolved. No case is cited, and we find none of any sub-stantial aid; in fact, the parties admit that the question is one of first impression.

Defendant's theory, as we understand it, is that Section 11 is self-executing and that when plaintiff on May 22, 1950 granted a license to Perfect, the rights of plaintiff and defendant were immediately fixed. Under this theory, no duty rested upon the defendant to elect or notify plaintiff of the acceptance of the terms which had been accorded Perfect. "At any time," so defendant argues, it was entitled to a paid-up license when $13,500 was offered, including royalties which had been previously paid. Defendant waited almost one year before offering plaintiff the difference between $13,500 and the total of the amount which it had previously paid in royalties. Obviously, under this theory it could have waited two years or, for that matter, until any time before the expiration of the patent when its royalty payments equalled $13,500, and demanded a paid-up license. It may be that the portion of Section 11 referring to royalties is self-executing. It could hardly be questioned, we think, that if plaintiff's license with Perfect had provided for royalty payments less than those provided in its agreement with defendant, the latter, without any action on its part, would have been entitled to the benefit of such reduced rates. Under such a situation the rights of the parties would have been definitely fixed. But the situation before us is different. Whether the lump sum payment by Perfect for a paid-up license was "more favorable terms" than the royalty payments then being made by defendant was uncertain; it was an open question. And it was one which could only be resolved by the defendant. It appears evident that plaintiff could not have forced defendant to comply with the terms which it had accorded Perfect. Plaintiff's offer to grant defendant a paid-up license on terms as favorable as those accorded to Perfect was in the nature of an option which to become effective required action.

The purpose of the controversial language in Section 11 evidently was to preserve a basis of equality among those licensed to use or sell the patented article. Therefore,

when more favorable terms were accorded to one licensee, the others were entitled to the same treatment. Defendant tacitly concedes, it could not well do otherwise, that its theory, if adopted, would result in preferred, not equality of treatment. It can hardly be doubted that an amount paid in a lump sum, as was done by Perfect, was more costly to the payor than a similar amount paid over a course of time on an installment basis (without interest), or, conversely, that the lump sum payment was worth more to the payee. More than that, Perfect, in paying a lump sum for a paid-up license, took the risk that such payment would cost it more in the long run than royalty payments. Defendant was unwilling to take such risk but elected to wait until it could determine the course which would be more advantageous. If royalty payments had decreased to the extent that it was more profitable to continue on that basis, defendant undoubtedly would have done so. It was only after it determined that a lump sum payment would be more advantageous than royalty payments that it elected to request a paid-up license. It had a right, of course, to proceed in this manner but, when it did so, it was not entitled, in our judgment, to credit on a paid-up license for the royalty payments which it had made.

Defendant, at the time Perfect acquired its license from plaintiff, was entitled, upon request, to a paid-up license on the payment of a lump sum of $13,500; it is so entitled today, nothing more and nothing less.

The judgment is

Affirmed.