**NEW WRINKLE, INC., Appellant,**

v.

**JOHN L. ARMITAGE & CO.**

**No. 12917.**

United States Court of Appeals
Third Circuit.

Argued Nov. 20, 1959.

Decided April 19, 1960.

Harry A. Toulmin, Jr., Dayton, Ohio (McCarter & English, Newark, N. J., Toulmin & Toulmin, Dayton, Ohio, Ward J. Herbert, Griffith H. Jones, Newark, N. J., George W. Stengel, Dayton, Ohio, on the brief), for appellant.

Thomas Cifelli, Jr., Newark, N. J. (Richards & Cifelli, George D. Richards, Frank M. Murphy, Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

This is an action brought by New Wrinkle, Inc. (New Wrinkle) against John L. Armitage & Co. (Armitage) for a declaratory judgment that the manufacture, use or sale by Armitage of its product, "Armorhide", is an infringement of claims of three patents owned by New Wrinkle and licensed by it to Armitage. New Wrinkle also prayed for a decree requiring Armitage to carry out its obligations under the licensing agreement, and for an accounting. Armitage filed an answer and also a counterclaim seeking a declaratory judgment that it has not infringed the claims of the three New Wrinkle patents and that the manufacture, use, or sale of "Armorhide" by Armitage do not infringe the claims of the three patents. Jurisdiction is based on diversity and Section 2201, Title 28 U.S.C. The court below held in favor of Armitage, D.C., 1958, 168 F.Supp. 244 and this appeal followed. New Wrinkle bases its contentions in this court on claims 4 and 7 of U. S. Patent No. 2,510,966 to Flanagan. In the trial in the court below New Wrinkle also asserted that other patents supported its position, viz., No. 2,671,062, Waldie, claims 1, 4, 6, 7, 9, 10, and 12, and No. 2,671,063, Waldie, claims 1 to 4 and 8 to 18, inclusive.

The pertinent facts are as follows. In May, 1938, New Wrinkle granted Armitage a ten year non-exclusive license to make, use and sell "wrinkle" finishes, principally on metals but also for other materials, under any patents which New Wrinkle might own during the term of the license agreement. The agreement was renewed on substantially the same terms in 1948 and again in 1958. The present litigation grows out of the development by Armitage of its own finish for metals, "Armorhide". The record demonstrates that this composition was developed pursuant to a request by International Business Machines Corporation which was searching for a leather-like finish for the outside metal coverings of its machines. When the president of New Wrinkle discovered the existence of "Armorhide" in 1955 he proposed to the president of Armitage that the two companies jointly exploit the new product. This suggestion was rejected by Armi-

tage and New Wrinkle then instituted the suit at bar in January, 1956.[1]

As we have said, one of the patents in issue is the Flanagan Patent No. 2,510,-966, claims 4 and 7. The patent states a method for the production of a wrinkle or textured finish from materials which ordinarily do not wrinkle. The finish is produced by applying an organic solution of thermoplastic vinyl resin to a surface such as a metal base plate, which is, in fact, the material to be covered; drying the solution, either unaided or by the application of heat, to form a thin surface skin, spraying finely dispersed droplets of water onto the skin, and evaporating the solvent from the resin solution. This produces a textured leather-like finish. The use of Armitage's process also produces a textured or leather-like finish designated by Armitage as "Armorhide". Armitage contends that "Armorhide" is produced pursuant to the teachings of U. S. Patent No. 2,715,587, Armitage, and of U. S. Patent No. 2,575,-046, Chavannes respectively owned by or exclusively licensed to Armitage. These patents are somewhat illustrative of the Armitage process but are, of course, otherwise irrelevant. Essentially Armitage's "Armorhide" finish is achieved by applying a layer of thermoplastic vinyl resin, some in solution, some in dispersion, to a base plate, flash drying, spraying the base plate with an organic oxygenated solvent such as cycloplexane, and heating or baking it. The evidence shows that vinyl in dispersion is essential to the proper working of the Armitage process. The vinyl in solution is also necessary as a binder.

New Wrinkle contends that the method employed in making Armitage's "Armorhide" is the same or the equivalent to that disclosed by the Flanagan patent and is covered by claims 4 and 7 in issue and that therefore Armitage must pay royalties to it under the terms of their license agreement.[2] New Wrinkle insists that "Armorhide" is the same product as that produced by the Flanagan process. Armitage insists that it has achieved a novel result by a method not covered by claims 4 and 7 of Flanagan.

▮▮▮ It is hornbook law that a licensee must pay royalties not only on the invention disclosed in a patent but he must also pay royalties on whatever is sufficiently similar to that disclosure to constitute infringement of the licensed process or product. St. Paul Plow Works v. Starling, 1891, 140 U.S. 184, 11 S.Ct. 803, 35 L.Ed. 404. If a licensor brings suit as here for additional royalties the licensee is not barred from questioning the scope of the patent sued on in order to establish a defense of non-infringement. Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 1949, 174 F.2d 541; Sinko Tool & Mfg. Co. v. Casco Products Corp., 7 Cir., 1937, 89 F.2d 916. The burden of proof is upon the licensor to prove infringement. Au-

1. In its original complaint New Wrinkle asserted that it was entitled to royalties on all wrinkle finishes manufactured and sold by Armitage, regardless of whether they were covered by any of New Wrinkle's patents. This contention, however, was rejected by the court below by a summary judgment in favor of Armitage, affirmed by this court at 3 Cir., 1956, 238 F.2d 753.

2. The claims are as follows:
"4. In a method of making wrinkle-textured films, the steps of (a) applying a layer of an organic solution of thermoplastic resin to a base plate; (b) drying said layer thereby developing a thin skin on the surface of said layer of resin solution; (c) spraying finely dispersed drop-lets of water onto said skin, said water having dissolved coloring matter insoluble in the solvent of said solution; and (d) evaporating said solvent from said resin solution whereby a wrinkle textured colored pattern forms in the surface of said layer."

"7. In a method of making a wrinkle-textured film, the steps (a) of forming a film of a vinyl copolymer of vinyl chloride and vinyl acetate; the step (b) of regulating the viscosity and plasticity of said film; the step (c) of applying finely dispersed droplets of water which contain a wetting agent to at least one surface of said film, and (d) the step of subjecting the thus treated film to heat to cause the film to wrinkle."

tomotive Parts Co. v. Wisconsin Axle Co., 6 Cir., 1935, 81 F.2d 125, 128; Hatmaker v. Dry Milk Co., 2 Cir., 34 F.2d 609, 611, certiorari denied, 1929, 280 U.S. 604, 50 S.Ct. 86, 74 L.Ed. 649.

■ The construction of a patent presents an issue of law, but the issue of infringement is one of fact. Coupe v. Royer, 1895, 155 U.S. 565, 15 S.Ct. 199, 39 L.Ed. 263; Winans v. Denmead, 1853, 15 How. 329, 56 U.S. 329, 14 L.Ed. 717. The dispute which we must determine is whether the process whereby "Armor-

hide" is made is so similar to those disclosed by Flanagan as to constitute infringement. It is also hornbook law that findings of fact made by a trial court cannot be set aside unless clearly erroneous. Rule 52(a), Fed.R.Civ.Proc., 28 U.S.C.

■ The problems encountered in comparing the "Armorhide" process to Flanagan are not as difficult as they appear at first blush. We will take "Chart No. 2", New Wrinkle's Exhibit P–20, as fairly illustrative of the two respective processes, as follows:

*New Wrinkle Process*

(1) Vinyl Resin Solution (Vinyl Resin + *Solvent*)

(2) Apply a Layer to a Base Plate

(3) Flash Dry to Form a Skin

(4) Spraying the *Non-Solvent* Water on said Skin

(5) Form Textured Film by Baking

*Armitage Process*

(1) Vinyl Resin Dispersion (Vinyl Resin + *Non-Solvent*)

(2) Form a Layer

(3) Flash Dry to Form a Skin

(4) Spraying the Resin *Solvent* on said Skin

(5) Form Textured Film by Baking

It is the contention of New Wrinkle that Armitage in the "Armorhide" process simply reversed the Flanagan process by transposing New Wrinkle's step "1" and New Wrinkle's step "4". Therefore, says New Wrinkle, the "Armorhide" process is essentially the same as Flanagan. The issue, however, is not as simple as this as the court below found. The vinyl resin in Armitage step "1" is in dispersion and the record shows that this is an essential if the process is to be operable. By contrast, in the Flanagan process, the vinyl resin is in solution. In the absence of proof, and New Wrinkle offered none, that vinyl resin in solution, step "1" of New Wrinkle, plus "non-solvent", water, step "4" of New Wrinkle, would generate the same chemical reaction as vinyl resin in dispersion, Armitage step "1", plus a resin

solvent, such as cyclohexanone, Armitage step "4", the court below was justified in concluding that the processes were not the same or substantially equivalent even had the products been identical.

Were the products of the two processes the same? The court below found, D.C., 168 F.Supp. at page 247, that there was "no proof, either by testimony or by demonstration" that the "Armorhide" process achieved the same result as did Flanagan. The court went on to say, "in this limited field of commercial finishes there are indications" that Armitage had developed in "Armorhide" a novel result. This is true. The panels introduced in evidence by Armitage demonstrating the results obtained by the Armitage "Armorhide" process and the testimony of Skandalaris, Chrysler Corporation's laboratory supervisor in

charge of all of that company's chemical coatings and clearly a qualified expert, show that "Armorhide" was a new and useful product.[3]

The judgment of the court below will be affirmed.

---

**3.** New Wrinkle seems almost to have abandoned the Waldie patents as to both product and process claims. These patents were barely referred to by New Wrinkle in its briefs and oral argument in this court and there was no discussion of the claims. But assuming that New Wrinkle still presses the Waldie patents as bases for Armitage's alleged infringement, we conclude, as did the court below, that these patents do not disclose the product or process of Armitage's "Armorhide".