**Glenway MAXON Jr., Plaintiff,**

v.

**MAXON CONSTRUCTION COMPANY, Inc., Defendant.**

Civ. A. No. 2933.

United States District Court
S. D. Ohio, W. D.

Oct. 4, 1966.

Ira Milton Jones, Milwaukee, Wis., Dybvig & Dybvig, Dayton, Ohio, for plaintiff.

Marechal, Biebel, French & Bugg, Dayton, Ohio, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

WEINMAN, Chief Judge.

This is an action to recover royalties claimed to be due plaintiff under a patent license agreement with defendant. Over 20 years ago, plaintiff and defendant entered into a license agreement under which defendant was licensed to make a rear dump device which was claimed in plaintiff's patent No. 2,465,899; said patent has now expired.

The only question in this case is whether the "side-dump" bodies made and sold by defendant come within the scope of claim 15 of plaintiff's patent. If they do, defendant is obliged to pay royalties to plaintiff on all those bodies that it made and/or sold to the date of expiration of the patent.

### FINDINGS OF FACT

1. Plaintiff, Glenway Maxon, Jr., is a resident of the State of Wisconsin.

2. Defendant, Maxon Construction Company, Inc., is an Ohio corporation

having a regular and established place of business which is within this judicial district.

3. On January 22, 1945, Glenway Maxon, Jr. filed an application for a patent relating to dump trucks. On March 29, 1949, the patent was issued as United States Letters Patent 2,465,-899. The patent contains twenty-five claims; however, only claim 15 of the patent is significant to this action.

4. In the patent as issued, the inventor states that

"This invention relates to dump trucks and refers more particularly to improvements in bodies for dump trucks and in the hoist mechanism for swinging the truck body between transit and discharge positions."

The inventor further states the objects of his invention, the following being the most relevant to this action:

"Another object of this invention resides in the provision of a dump truck body wherein the bottom wall is slanted upwardly toward the rear of the body to form in effect a rear end wall for the body and to define a space between the bottom of the body and the truck frame at the rear of the truck in which the hoist mechanism is readily detachably mounted.

"Another object of this invention is to provide a pivotal support for the rear of the body located a substantial distance above the frame of the truck and consequently at a substantial height above ground level so that materials in the body are discharged over the upper edge of said slanting bottom wall at a desirably high elevation upon tilting of the body upon its pivotal support.

"Another object of this invention resides in the provision of a body for dump trucks wherein the bottom wall is formed with a horizontal section to rest directly on the truck frame and wherein said bottom wall has its rear portion slanted upwardly and rearwardly toward the back of the truck for pivotal connection to the hoist mechanism located in the space between the slanting bottom wall and the frame of the truck with the pivot axis located at a substantial elevation above the frame to provide a high discharge for the body."

5. Claim 15 of the patent in suit states:

"In combination with a dump truck having a frame: a body for the truck having a bottom wall the rear portion of which slants upwardly toward the rear of the body to provide in effect a rear end wall for the body; means on the frame supporting the rear end of the body for pivotal motion about a transverse axis spaced a substantial distance above the frame to enable tilting of the body and the discharging of its contents over the upper edge of said slanting bottom wall; a gate; and means pivotally mounting the gate on the rear end portion of the body to swing from and toward a closed position blocking the discharge of the body contents over the upper edge of said slanting bottom wall."

6. The language of the license agreement between plaintiff and defendant requires payment of royalties on dump bodies "coming within the scope of one or more of the unexpired letters patent subject to this agreement."

7. Defendant sold rear dump bodies for as many uses and to as many different customers as it could find. In a few cases it learned that a user had mounted those bodies crosswise on a truck chassis and in a few instances it advocated cross-mounting these bodies on a railroad car. In each case the body dumped from its rear and its construction was in all respects identical with the bodies mounted in the normal position for dumping from the rear of the truck. Since the construction of these bodies was the same, defendant believed they came within the scope of the license agreement and paid royalties to plaintiff without question.

8. Defendant has honored its license agreement with plaintiff by paying royalties on all rear dump bodies sold by it up

until the expiration of a licensed patent on March 29, 1966. Defendant still sells this type of body.

9. As the highway building program was stepped up, speed of operation became an increasingly important factor. Defendant developed a concrete spreading machine for this purpose which rides on the form rails and lays down a band of concrete across the width of a highway. The rear dump truck body was used to transport the concrete from a central mixing plant to the spreader but it was found to be inadequate to do the job properly. Defendant then developed its side dump body, specially designed for the purpose and mounted so that the truck could pull up parallel to the roadway under construction, dump its load rapidly along its entire side wall into the hopper, and pull away to allow the next truck to do the same thing, both trucks moving along the side of the highway and eliminating any need for backing or for the use of chutes. The operation was speeded up, gave precise positioning of the load, and has been a major factor in achieving high production in road building operations.

10. Claim 15 defines a gate pivotally mounted on "the rear end portion of the body to swing from and toward a closed position blocking the discharge of the body contents over the upper edge of * * * [the] slanting bottom wall." This language accurately describes the construction and operation of the gate 44 of Fig. 7 of the patent where the gate does block off the flow and where it can be raised out of the way and allow the discharge to take place from the edge of the bottom wall. In defendant's side dump construction, the gate has an entirely different function. It is not a blocking device in the sense of gate 44 of the patent, but rather acts as a bridge or chute to convey the concrete from the edge of the side wall, across the wheels and to discharge it into the hopper along the entire longitudinal extent of the body.

11. One of the most significant differences between claim 15 and defendant's device is that claim 15 requires the gate to swing from a closed position blocking the discharge over the upper edge of the bottom wall to the open position. In the structure shown in the patent the body can be put in dump position and with the gate closed the contents cannot be discharged until and unless the gate is opened. Quite to the contrary, in defendant's device the gate opens first and forms a bridge over which the contents flow as soon as the body raises far enough for the contents to spill out. It has no blocking function during the dumping operation but only the bridging function to discharge the concrete over its outer edge into the proper position.

12. Another significant difference between claim 15 and defendant's device is that claim 15 calls for means on the frame supporting the rear end of the body for pivotal motion. Obviously, if rear is to be read as side then at least it must be read consistently that way. But if defendant's body is considered as dumping from the rear, then the pivotal means for supporting it are attached to the sides and not to the rear.

13. The Court finds that defendant's side dump device has a different construction and a different mode of operation than the device defined in claim 15 of plaintiff's patent. Defendant's device accomplishes a new and importantly different result by mass discharging of the contents to a position laterally beyond the edge of the side wall and into the hopper of a spreader. Even if the body be viewed entirely without reference to its position on the truck, the language of claim 15 cannot be read on defendant's device.

14. Plaintiff obtained his patent on a particular arrangement of structural details, operating in a particular way and it is obvious that the repeated references in the patent to "rear portion," "rear end" and "rear end portion" do not define defendant's side dump construction.

15. Under the license agreement, no royalties were due plaintiff on a proprietary design which was different in construction, different in mode of opera-

tion, and which achieved significantly different results in use from the structures disclosed in plaintiff's patent No. 2,465,899.

16. The sales of defendant's rear dump bodies declined in the later years of the license agreement. This was due to causes beyond defendant's control and there was no failure on the part of defendant to use all reasonable efforts to promote the sale of this device.

17. The Court finds that plaintiff has failed to prove by a preponderance of the evidence that the device manufactured and sold by defendant is sufficiently similar to claim 15 of plaintiff's patent No. 2,465,899 to constitute infringment of that patent.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and the parties to this action.

2. "It is hornbook law that a licensee must pay royalties not only on the invention disclosed in a patent but he must also pay royalties on whatever is sufficiently similar to that disclosure to constitute infringement of the licensed process or product. * * * If a licensor brings suit as here for additional royalties the licensee is not barred from questioning the scope of the patent sued on in order to establish a defense of non-infringement. Midland Steel Products Co. v. Clark Equipment Co., 6 Cir. 1949, 174 F.2d 541 * * *. The burden of proof is upon the licensor to prove infringement. * * * " New Wrinkle, Inc. v. John L. Armitage & Co., 277 F.2d 409, 411–412 (6 Cir. 1960).

3. Since defendant is a licensee it cannot attack the validity of the patent under which it is licensed; however, it may refer to the prior art for the purpose of limiting the scope of the claims of the patent and to show that the claims should not be construed so broadly as to read upon defendant's device. Kenyon v. Automatic Instrument Co., 186 F.2d 752, 755 (6 Cir. 1951) and Midland Steel Products Co. v. Clark Equipment Co., 174 F.2d 541, 543–544 (6 Cir. 1949), cert. denied 338 U.S. 892, 70 S.Ct. 243, 94 L.Ed. 548.

4. The claims of a patent must be read in light of the specifications, drawings and file wrapper history and may not be given a construction broader than the teachings of the patent. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211 (1940), opinion amended and petition for rehearing and the motion to remand denied, 312 U.S. 654, 61 S.Ct. 235, 85 L.Ed. 132 (1940); Tillotson Manufacturing Company v. Textron, Inc., Homelite, 337 F.2d 833 (6 Cir. 1964) and Cincinnati Milling Machine Co. v. Turchan, 208 F.2d 222 (6 Cir. 1953).

5. " * * * Where the claims of a patent define an element in terms of form, location, or function, thereby creating an express limitation and where that limitation pertains to the inventive step, other forms may not be treated as equivalents. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co., 6 Cir., 259 F. 236, Crampton Mfg. Co. v. Crampton, 6 Cir. 153 F.2d 543, certiorari denied 328 U.S. 840, 66 S.Ct. 1017, 90 L.Ed. 1615; Midland Steel Products Co. v. Clark Equipment Co., 6 Cir., 174 F.2d 541." Dow Chemical v. Skinner, 197 F.2d 807, 810 (6 Cir. 1952).

6. Applying the applicable law to the facts as hereinbefore found the Court concludes that claim 15 of United States Letters Patent 2,465,899 cannot be read to cover the side dump bodies manufactured and sold by defendant and accordingly defendant is not liable for any royalties on said side dump bodies under its license agreement with plaintiff.

## JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law it is hereby ordered, adjudged and decreed:

That defendant, Maxon Construction Company, Inc., has no liability to plaintiff, Glenway Maxon, Jr., under plaintiff's complaint in this action and

That plaintiff's complaint is dismissed.