Glenway MAXON, Jr., Plaintiff-Appellant,

v.

MAXON CONSTRUCTION COMPANY, Inc., Defendant-Appellee.

No. 17714.

United States Court of Appeals
Sixth Circuit.

May 31, 1968.

James R. Custin, Milwaukee, Wis., Irvin J. Zipperstein, Froikin & Zipperstein, Dayton, Ohio, on brief; Ira Milton Jones, Milwaukee, Wis., of counsel, for appellant.

Lawrence B. Biebel, Dayton, Ohio, Marechal, Biebel, French & Bugg, Joseph G. Nauman, Dayton, Ohio, on brief, for appellee.

Before WEICK, Chief Judge, and EDWARDS and McCREE, Circuit Judges.

WEICK, Chief Judge.

The suit in the District Court was to recover royalties alleged to be owing under the provisions of an agreement licensing a patent on an improved dump body for trucks used in hauling cement. The plaintiff, Glenway Maxon, Jr., was the patentee and owner of U. S. Patent No. 2,465,899 which was issued on March 29, 1949, and expired March 29, 1966. He was the licensor and the defendant, Maxon Construction Company, Inc., (Company) was the licensee in the license agreement.

Jurisdiction was based on diversity of citizenship.

The company had paid Maxon royalties until the expiration of the patent on dump bodies made and sold by it, which bodies dumped cement to the rear of the truck, and, as conceded, were covered by the patent.

The issue in this case arises because the company, in about 1960, made and sold another style dump body which dumped cement to the side rather than to the rear of the vehicle, and which it claimed was not within the scope of any claim of Maxon's patent. It refused to pay royalties thereon.

The District Judge heard the evidence without a jury and adopted findings of fact and conclusions of law holding that the side dump body was outside the scope of any claim of Maxon's patent, and that the company was not required to pay royalties thereon. He dismissed the complaint. 263 F.Supp. 758 (D.C.S.D.Ohio 1966).

Maxon appealed.

■ At the outset it should be observed that the validity of Maxon's patent is not in issue here. The licensee is estopped from questioning the validity of the patent. Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950).

■■ But the licensee has a defense if the product he is making and selling does not come within the scope of any claim of the patent. The licensee is required, however, to pay royalties not only on the invention disclosed in the patent but also on whatever is sufficiently similar thereto as to constitute infringement of the patent. New Wrinkle, Inc. v. John L. Armitage & Co., 277 F.2d 409 (3rd Cir. 1960); Midland Steel Products Co. v. Clark Equipment Co., 174 F.2d 541 (6th Cir. 1949).

An illustration of Maxon's patented dump body and the company's side dump body is shown in the appendix.

A description of Maxon's invention, set forth in the statement of facts in his brief and accepted by the company, is as follows:

"The invention of the Maxon patent is directed to the problem of providing a dump body that will satisfactorily haul freshly mixed concrete from a mixing plant to a dam or highway paving project or other place of use, and will quickly and cleanly discharge its load at the site, all under the adverse conditions that usually prevail on concrete jobs (106a, col. 5, lines 27–29).

The familiar box-like dump truck body commonly used for hauling sand, gravel and earth is not suitable for hauling concrete. As brought out at

col. 1 of the Maxon patent (104a) such a conventional dump truck body is necessarily mounted on the frame of a truck with its bottom wall about a foot above the frame, so that a truck with such a body, when loaded with concrete, would have a high center of gravity that would make it unsafe for operation over the rough, ungraded trails often used for hauling concrete to a pouring site.

Another serious disadvantage of the box type dump truck body is that its tilting axis is near the frame at a low elevation, and is intermediate the front and read ends of the body. As a result, its discharge outlet is close to the ground when the body is tilted to its load discharging position (Ibid.). Desirably, freshly mixed concrete should be discharged at a substantially high level, so that as it issues from the body it can be guided to any spot where it is needed within a relatively large area (104a, col. 1, line 52 through col. 2, line 4).

Thus a satisfactory dump body for freshly mixed concrete must meet the apparently conflicting requirements of having a low center of gravity when loaded and in its transit position, and of having its outlet at a substantially high level when tilted to its load discharging position.

The Maxon patent, at col. 1 (104a) brings out further complications encountered in the provision of a satisfactory concrete dump body. The body must have sufficient strength to support its high density cargo, not only in transit, but especially during tilting to its discharge position, when the thrust and reaction of the tilting mechanism and of the body contents impose opposite forces upon the body at very localized areas that are spaced apart by substantial distances. However, any structure that supports and reinforces the body should not require that the bottom wall of the body be spaced

unduly high above the frame of the carrying vehicle lest the center of gravity of the loaded body be raised thereby.

The patent also brings out (104a, col. 1, lines 38–43) that a dump body for hauling concrete should not permit any substantial amount of side-to-side sloshing of liquid or semi-liquid loads, otherwise there will not only be the possibility of spillage of cargo but the vehicle will be unstable in transit.

The commercial success of the dump body of the Maxon patent leaves no doubt that this complex of conflicting requirements was very well satisfied by the invention of that patent.

The patented dump body is characterized by a bottom wall which has a rear portion that slants upwardly toward a discharge opening at the rear of the body, so that the slanting rear portion of the bottom wall also serves in effect as a rear end wall for the body. Structure on the frame of the truck or other vehicle by which the body is carried supports the rear end of the body for tilting motion about an axis transverse to the body and spaced a substantial distance above the vehicle frame.

With this arrangement a portion of the body that is forward of the slanting rear end wall can rest directly on the vehicle frame, assuring that the bulk of a load in the body will be at a low level, and hence that the center of gravity of the loaded vehicle will also be low. Nevertheless the discharge outlet in the body will be at a substantially high level when the body is tilted to its discharging position (25a–26a).

The old style body made by the Company, upon which it paid royalties, closely resembled the embodiment of the invention shown in Figure 7 of the patent (103a).[1] In that embodiment the discharge outlet at the upper end of the slanting rear portion of the

---

1. Figure 7 is substantially shown in the Appendix under Maxon's patented dumping body in transit position.

bottom wall is normally blocked by a gate that is mounted for swinging motion by means of arms which extend forwardly from the gate along each side of the body and which are pivoted to the body at their front ends. As shown in Figure 7 the gate swings from its closed position to a raised open position in which it overlies the upper edges of the body side walls near their rear ends. The gate is illustrated as arcuately curved in cross section, and the rear edges of the body side walls are shown with a corresponding curvature to accommodate swinging of the gate about the axis defined by the pivotal connections of the arms to the body."

As the drawings indicate, the two bodies do have different appearances. The company's side dump body is wide while Maxon's body is much longer than its width. But despite the differences in appearance, the question remains whether the company's body has features coming within the scope of the claims of the patent.

Only Claim 15 of the patent is pertinent here. That claim reads as follows:

"In combination with a dump truck having a frame:

a body for the truck having a bottom wall the rear portion of which slants upwardly toward the rear of the body to provide in effect a rear end wall for the body;

means on the frame supporting the rear end of the body for pivotal motion about a transverse axis spaced a substantial distance above the frame to enable tilting of the body and discharging of its contents over the upper edge of said slanting bottom wall;

a gate;

and means pivotally mounting the gate on the rear end portion of the body to swing from and toward a closed position blocking the discharge of the body contents over the upper edge of said slanting bottom wall."

Comparison of his claim with the company's body will reveal the similarities.

The first element of Claim 15 provides:

"A body for the truck having a bottom wall the rear portion of which slants upwardly toward the rear of the body to provide in effect a rear end wall for the body."

The side dump body has a bottom wall, the rear portion of which slants upwardly and outwardly and serves as a rear wall. In the appended drawings, the rear end portion of the bottom wall of both bodies is shaded. The word "rear" in the claim, in our opinion, refers to the body and not to the truck. In the testimony of one of the witnesses for plaintiff and one for the defendant, the rear of a body was stated to be that portion of it from which the cement is discharged. This would seem to be more logical than to orient the front, rear and sides of the body to the truck or side car on which it is mounted.

While ordinarily Maxon's dump body was mounted lengthwise on the truck with the rear of the body at the rear of the vehicle, there were several instances in which Maxon's bodies were mounted transversely on the vehicle with the rear of the body at one side of the vehicle. In one such instance the body was mounted transversely on an oversize truck intended for off-highway travel, and in the other two instances the bodies were mounted transversely on the bed of a railroad flat car. In each of these instances the company paid royalties to Maxon even though the bodies dumped cement from the side of the vehicle or flat car.

The second element of the claim reads:

" * * * [M]eans on the frame supporting the rear end of the body for pivotal motion about a transverse axis spaced a substantial distance above the frame to enable tilting of the body and discharging of its contents

over the upper edge of said slanting bottom wall."

Both the patented body and the side dump body have structures on the frame of the vehicle which project upwardly and support the body for tilting motion about an axis located a substantial distance above the frame and near the discharge opening. The contents are discharged over the upper edge of the slanting wall. As we will later demonstrate, the fact that the company's body has a gate which operates as a chute over which the contents pass after going over the slanting wall, does not take it outside the scope of the claim.

The company contends that "if the side dump body is considered as dumping to the rear, then the pivotal means for supporting it are attached from the sides *and not to the rear*" of the body, and that the claim provides only for support to the rear end of the body.

The claim does not state where the means supporting the rear end of the body for pivotal motion should be *attached.* All that the claim requires is that the means shall support the rear end of the body and it is immaterial whether the supporting means are attached to the bottom, top or to its sides.

The third element of the claim merely provides for "a gate". Both bodies have a gate.

The last element of the claim reads:

" * * * and means pivotally mounting the gate on the rear end portion of the body to swing from and toward a closed position blocking the discharge of the body contents over the upper edge of said slanting bottom wall."

Each body has means pivotally mounting the gate. The claim refers to the rear end portion of the body, not to the truck. As we have heretofore pointed out, the rear of the body is the portion from which the discharge is made. The gate of each body is pivotally mounted on the discharge portion of the body.

In transit, the gate of each body swings toward a closed position and blocks the discharge of the cement over the upper edge of the slanting bottom wall of the body.

The gates of the two bodies, however, operate differently.

In the patented body, during discharge the gate swings up out of the way of the discharged material. In the company's body, the gate swings downward to its open position and serves as a chute along the entire upper edge of the body wall over which the material is discharged beyond the body wall into a hopper. In both bodies, the operator can control the opening or closing of the gate.

The District Court was of the view that the differences in the functions of the gates brought the company's body outside the scope of Claim 15. In our judgment, this does not follow.

■ There is one function common to the gates of both bodies—that is, during transit both gates operated so as to swing from and toward a closed position blocking the discharge of the body contents over the upper edge of the slanting bottom wall. This is all that Claim 15 required. It is immaterial that the company's gate had another function such as a chute. Aluminum Corp. of America v. Sperry Products, Inc., 285 F.2d 911, 924 (6th Cir. 1960).

■ While the specifications and drawings of Maxon's patent do describe and illustrate a rear dump body, Claim 15 contains no such limitation. The claims of a patent are not necessarily limited to the embodiment depicted in the patent. Arnold Pipe Rentals Co. v. Engineering Enterprises, Inc., 350 F.2d 885 (5th Cir. 1965); Metal Cutting Tool Service v. National Tool Co., 103 F.2d 581, 583 (6th Cir. 1939).

■■ A patentee is only required to describe the best method of practicing his invention but he is not confined to that. If his claim is broad enough, he

may claim infringement "if another uses the principle and appropriates the substance of his invention." Grant Paper Box Co. v. Russell Box Co., 154 F.2d 729, 731 (1st Cir. 1946). His claims are the measure of his invention.

■■ To take Maxon's concept and provide for dumping to the side rather than to the rear of the vehicle did not relieve the company of its obligation to pay royalties. One may not avoid infringement by a mere change in the position of an operable element when the operation and results achieved by the accused device are essentially the same as the patented device. E. H. Bardes Range & Foundry v. American Engineering Co., 109 F.2d 696 (6th Cir. 1940).

The company further contends that pertinent prior art patents, namely, *Eisenberg* 2,194,068 and *Flowers* 2,029,995, which disclosed side dump bodies, were not considered by the Patent Office when it allowed Claim 15 and that a proper consideration thereof would have resulted in limiting Maxon's patent to a rear dump body.

■ Although a licensee may not challenge the validity of the patent, he can seek to limit the scope of the applicable claims by use of the prior art. Kenyon v. Automotive Industries, 186 F.2d 752, 755 (6th Cir. 1951).

It is noteworthy, however, that the District Judge did not refer to either *Eisenberg* or *Flowers* in his findings.

The Patent office did have before it *Golay* patent No. 2,358,224, which taught dumping from either side and from the rear of the vehicle. This feat was accomplished by mounting the dump body on a turntable erected on the frame of the truck. In our judgment, *Golay* was as good or better a reference than either *Eisenberg* or *Flowers*. *Eisenberg* does not even contain the entire combination of Maxon.

*Golay* certainly advised the Patent Examiner that any dump body which discharges to the rear of the truck could also be arranged so as to dump to the side. In other words, it did not require inventive genius for the company to provide for side dumping. Neither did the disclosure in *Golay* of rear dumping, convince the Examiner that he ought not to allow Maxon's patent to issue.

None of the prior art patents contained the teaching of Maxon that the axis providing the pivotal motion to enable tilting of the body must be supported on, and spaced a *substantial* distance above, the frame. This is what achieved a high level of discharge of the material.

The District Judge in Finding No. 9 stated that as the highway building program was stepped up, speed of operation became an increasingly important factor. He found that the company developed a concrete spreading machine for this purpose which rides on rails and lays a bond of concrete across the width of the highway. He found that the company developed the side dump body especially for this operation so that the truck could pull up parallel with the road under construction, dump its load and pull away to allow the next truck to do the same thing. This woud speed up the operation because it would take more time for Maxon's rear dump truck to back up and unload. The side dump body would give precise positioning of the load. He also found that the company's gate was better because it functioned as a chute.

■ Be that as it may, it does not disprove infringement. As well stated by the Supreme Court in Temco Elec. Motor Co. v. Apco Mfg. Co., 275 U.S. 319 at 328, 48 S.Ct. 170, 173, 72 L.Ed. 298 (1928):

> "It is well established than an improver cannot appropriate the basic patent of another and that the improver without a license is an infringer, and may be sued as such."

■ In our opinion, the company's side dump body reads on Claim 15 of Maxon's patent.

**336**

The judgment of the District Court is reversed and the case is remanded for determination of the amount of royalties due Maxon under the provisions of the license agreement and for the entering of judgment in his favor therefor.

THE COMPANY'S SIDE DUMP BODY

Transit position

Dump position

1. Substantially raised body pivot
2. Gate in blocking position
3. Gate pivot
4. Rear portion of upwardly slanting bottom wall

5. Frame
6. Body
7. Substantially raised body pivot
8. Gate in non blocking position
9. Bracket supporting body pivot point

APPENDIX

MAXON'S PATENTED DUMPING BODY

Transit position

Dump position